IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD HAMILTON, | : | |
| Plaintiff, | : | Case No. 2:03-CV-669 |
| v. | : | Judge Holschuh |
| UNITED STATES OF AMERICA, | : | Magistrate Judge King |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Pro se plaintiff Ronald Hamilton filed suit against the United States, the United States Department of Education ("DOE"), New York State Higher Education Services Corporation ("NYSHESC"), and Educational Credit Management Corporation, Federal Offset Unit, challenging the garnishment of his wages and offsets of his tax refunds in connection with alleged defaults on two student loans.  This matter is currently before the Court on Defendants' motion for summary judgment (Record at 32), Plaintiff's cross-motion for summary judgment (Record at 43), and on Plaintiff's "motion for rehearing of injunctive relief" (Record at 41).  For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motions are denied.

I.      Background

In Spring of 2003, Ronald Hamilton, who was working at J.C. Penney, was notified that his wages would be garnished so that the DOE could collect on two defaulted student loans.  He filed suit against Defendants, alleging violations of his Fourteenth Amendment due process rights.  He argued that Defendants were barred from collecting on the student loans because the

statute of limitations had run, and because the loans at issue had been discharged by Fleet Bank. He sought damages and urged the Court to order the DOE to halt its collection efforts and delete any adverse credit history related to the student loan defaults.

On March 15, 2005, Defendants moved for summary judgment.[1] Plaintiff then filed a "motion for rehearing of injunctive relief," urging the Court to enjoin Defendants from "further garnishment offsets" until after trial, and to stay all court proceedings until he could be heard on the matter. Plaintiff then filed a memorandum in opposition to Defendants' motion for summary judgment, along with his own motion for summary judgment.

## II.     Cross-Motions for Summary Judgment

### A.     Standard for Granting Summary Judgment

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

---

[1] Plaintiff attempted to appeal the Court's order granting Defendants an extension of time to file their motion for summary judgment. The Sixth Circuit dismissed that appeal on May 3, 2005.

if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the]

3

essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court

4

may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. U.S., 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." Id. (citations omitted).

**B.     Discussion**

Plaintiff testified that in the 1970's and 1980's, he attended at least six different post-secondary institutions. During that period, he applied for, and received, numerous student loans. (Pl. Dep. at 63-64).[2] Only two of those student loans, however, are at issue in this case, both held by the DOE. According to Jessica Liu, a Senior Loan Analyst with the DOE, the first loan was issued in 1983 in the amount of $1,200.00. The loan, made by Goldome Bank, was guaranteed by the NYSHESC, which paid Goldome after Plaintiff defaulted in December of 1989. In December of 1998, the loan was assigned to the DOE. At that time, the total amount due, with unpaid accrued interest, was $2,771.94. The DOE was able to collect a portion of the debt through tax offsets and wage garnishment but, as of March 7, 2005, Plaintiff still owed

---

[2] Plaintiff testified that even though he signed promissory notes for each student loan, the banks told him that he would not be obligated to repay the loans. (Pl. Dep. at 79).

5

$2,912.53. (Liu Dec. ¶ 44, Ex. 5 to Defs.' Mot. Summ. J.).[3]

The second loan, for $2,500.00, was made in the Fall of 1984. It was also made by Goldome and guaranteed by the NYSHESC. As with the first loan, NYSHESC paid Goldome after Plaintiff defaulted in December of 1989. In December of 1998, the loan was assigned to the DOE. With unpaid accrued interest, Plaintiff owed $5,775.16. Again, a portion of the debt was collected through tax offsets and wage garnishment, but as of March 7, 2005, Plaintiff still owed a total of $5,981.48 on this loan. (Id. at ¶ 45).[4]

Plaintiff's Amended Complaint alleges that Defendants are barred from collecting the outstanding student loans because: (A) the statute of limitations is only six years, and the doctrine of laches applies; and (B) Fleet Bank discharged his debt for these student loans.[5] The Court will address each of these arguments in turn.

### 1. Statute of Limitations and Due Process Concerns

---

[3] The Court rejects Plaintiff's argument that Ms. Liu's sworn declaration is not based on personal knowledge. The first seven paragraphs of her affidavit lay an adequate foundation for her statements. The Court also rejects Plaintiff's argument that her declaration constitutes inadmissible hearsay. The DOE documents attached to her declaration, and on which her statements are based, are admissible under Fed. R. Evid. 803(6) (records of regularly conducted activities) or under Fed. R. Evid. 803(8) (public records).

[4] Plaintiff's Amended Complaint states that he "believes" that Defendants are attempting to recover for promissory notes executed in 1976 and 1981. (Amd. Compl. ¶¶ 6, 9). However, he has offered no evidence to contradict Jessica Liu's declaration, which indicates that the Department of Education holds only two promissory notes executed by Plaintiff in 1983 and 1984.

[5] In Plaintiff's memorandum in opposition to Defendants' motion for summary judgment, he also alleges that Defendants violated the Fair Debt Collection Practices Act and the Privacy Act. However, because these claims were not included in the Amended Complaint, the Court need not address them.

Plaintiff contends that Defendants' collection efforts are time barred. Defendants concede that, at one time, the statute of limitations for collecting defaulted student loans was six years. They note, however, that the Higher Education Technical Amendments of 1991 expressly abrogated all existing statutes of limitations. See 20 U.S.C. § 1091a(a)(1). Now, regardless of when the default occurred, the Government may pursue collection efforts. See United States v. Phillips, 20 F.3d 1005, 1007 (9th Cir. 1994)(in eliminating the statute of limitations, Congress "also revived all actions which would have otherwise been time-barred"); United States v. Hodges, 999 F.2d 341, 341-42 (8th Cir. 1993); United States v. Glockson, 998 F.2d 896 (11th Cir. 1993)(Congress intended the amendment to apply retroactively to all student loan collection actions).

Plaintiff claims that the retroactive application of this amendment violates his due process rights under the Fourteenth Amendment. The Sixth Circuit, however, has expressly rejected this argument. See United States v. Brown, No. 00-1994, 2001 WL 303362, at **1 (6th Cir. Mar. 19, 2001)(citing Hodges, 999 F.2d at 342, and Glockson, 998 F.2d at 898).

Plaintiff further argues that the doctrine of laches bars Defendants' collection efforts. He defaulted in 1989, but the DOE did not attempt to collect until many years later. The vast majority of courts have rejected this defense. As the First Circuit noted in Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 878 (1st Cir. 1995), "laches ordinarily cannot be raised as a defense against the government in an action brought to enforce a public right or protect a public interest." This principle has generally been applied in cases of student loan defaults. As one district court noted, to recognize a doctrine of laches defense in cases of student loan defaults would "undermine Congress's intent in eliminating the statute of

7

limitations." United States v. Davis, 817 F. Supp. 926, 929 (M.D. Ala. 1993). See also United States v. Lawrence, 276 F.3d 193 (5th Cir. 2001)(holding that § 1091a "extends to eliminate the equitable defense of laches"); United States v. Cobbs, No. 92-2452, 1993 WL 157365, at **1 (6th Cir. May 13, 1993)(holding that doctrine of laches did not preclude government's attempt to collect on student loan notes executed in mid-1970's); United States v. Robbins, 819 F. Supp. 672, 676 (E.D. Mich. 1993)("laches cannot be applied to contract actions brought to recover student loans that are subject to 20 U.S.C. § 1091a(a)").

In support of his argument that the doctrine of laches bars Defendants' collection efforts, Plaintiff cites to United States v. Rhodes, 788 F. Supp. 339 (E.D. Mich. 1992).[6] In Rhodes, the court recognized that "the defense of laches is generally inapplicable against the government." Id. at 342. It nevertheless found that the doctrine of laches barred the Government's suit because the debtor was materially prejudiced by the 17-year delay in attempting to collect on a defaulted student loan. The court noted that neither the lending institution nor the school the debtor had attended were still in existence, and relevant loan records were no longer available. Id. at 343.

The Rhodes case, however, appears to be an anomaly. See Kris Aungst, Student-Loan Dischargeability: Does the Doctrine of Laches Apply?, 23 Am. Bankr. Inst. J. 42, 43 (July/Aug. 2004). As discussed above, the vast majority of courts have held that the doctrine of laches does not bar the Government's efforts to collect on defaulted student loans. Furthermore, this case is factually distinguishable. Plaintiff in this case has not identified how he is materially prejudiced by Defendants' delay. Defendants have produced all relevant documents in connection with the

---

[6] Plaintiff also cites to Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969). That case, however, dealt with collusive joinder and jurisdictional issues, and is inapplicable.

8

student loans at issue.

In summary, the Court rejects Plaintiff's arguments that Defendants' collection efforts are time-barred and that retroactive application of the Higher Education Technical Amendments of 1991 violates his due process rights. The Court also rejects Plaintiff's argument that Defendants' collection efforts are barred by the doctrine of laches.

### 2. Alleged Discharge of Student Loans

Plaintiff further argues that Defendants are barred from collecting on the loans because his student loan debt has already been discharged. In support of this argument, he relies on a June 15, 1998 letter he received from Fleet Bank, along with a corrected form 1099-C. It is not clear why these documents were sent to Plaintiff. The June 15, 1998 letter states, "[a]ttached please find the tax statement requested." (Ex. 1 to Pl. Dep.). The attached document, issued by Fleet Bank, states, "[t]his document issued as a 1996 tax statement for a 1099C." It is entitled "Cancellation of Debt" and states that it is "Corrected as of June 15, 1998." (Id.).[7] It indicates that the "debt" was cancelled on December 31, 1996. However, it does not identify what the debt was, and it indicates that the amount of debt cancelled was $0.00. (Id.).

When questioned about these documents at his deposition, Plaintiff testified that "[w]ith the time frame involved . . . it appeared to me – it still appears to me that Fleet Bank is canceling the debt for the student loan." (Pl. Dep. at 38). He conceded, however, that no one at Fleet Bank has confirmed his speculative belief that the 1099C was issued to cancel any student loan debt. (Id. at 42). Defendants have submitted the sworn declaration of Susan Ainilian, a Vice President

---

[7] The original 1099C has not been produced and is not part of the record.

of Bank of America, which merged with Fleet Bank in 2004.[8]  She states that her search of the records of the DOE National Student Loan Data System and of Fleet National Bank and Bank of America, N.A. indicate that Plaintiff had no student loans with Fleet Bank or Bank of America, or any other predecessor banks.  (Ainilian Decl. at ¶¶ 4-5, Ex. D to Defs.' Mot. Summ. J.).  Ainilian concluded that "the 1099C issued by Fleet Bank in 1996 was issued in error and corrected in 1998."  (Id. at ¶ 6).

Plaintiff has presented no evidence to counter Ainilian's sworn declaration.  He simply alleges that Fleet Bank's issuance of the 1099-C constitutes fraud or material misrepresentation.  Fleet Bank, however, is not a party to this lawsuit.  Plaintiff also contends that Ainilian's declaration constitutes inadmissible hearsay and is not based on personal knowledge.  The Court disagrees.  She indicates that she searched the relevant records and found no indication that Fleet Bank, Bank of America, or any of its predecessor banks had made a student loan to Plaintiff.  Her statement is admissible under Fed. R. Evid. 803(7), which provides for the admissibility of evidence that a record is absent from records kept in the ordinary course of business.

While we might never know why Fleet Bank issued a form 1099-C to Plaintiff for tax year 1996 or sent a corrected form two years later, the undisputed evidence shows that Plaintiff had no student loans through Fleet Bank.  If Plaintiff had no student loans with Fleet Bank, Fleet Bank could not have discharged any such loans.  Therefore, based on the evidence presented, no reasonable jury could find that Fleet Bank's issuance of these documents served to discharge either of Plaintiff's student loans.  Finding no genuine issue of material fact, the Court grants

---

[8] Plaintiff objects to the taking of the "depositions" of Ms. Ainilian and Ms. Liu, citing irregularities in the noticing of the depositions.  However, as Defendants note, these individuals merely submitted declarations; they were not deposed.

Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

### III. Plaintiff's Motion for Injunctive Relief

Plaintiff has also filed a "motion for rehearing of injunctive relief," urging the Court to enjoin Defendants from "further garnishment offsets" until after trial, and moved to stay all court proceedings until he can be heard on the matter. In ruling on a motion for injunctive relief, a court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable injury in the absence of the requested injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether granting the injunction would be adverse to the public interest. See Tucker v. City of Fairfield, 398 F.3d 457, 461 (6th Cir. 2005).

In this case, the Court's conclusion that Defendants are entitled to summary judgment forecloses a finding that Plaintiff has a likelihood of success on the merits; the Court need not address the other three factors. Plaintiff's motion for injunctive relief is therefore denied.

### IV. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment (Record at 43) and Plaintiff's motion for injunctive relief (Record at 41) are both **DENIED.** Defendants' motion for summary judgment (Record at 32) is **GRANTED.** The Clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

Date: October 19, 2005 /s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court